FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2005 NOV -7 P 3: 02

LORETTA G. WHYTE
CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

WALTER BICKHAM                           CIVIL ACTION

VERSUS                                   NUMBER: 04-1703

JO ANNE B. BARNHART,                     SECTION: "N"(5)
COMMISSIONER OF SOCIAL SECURITY
ADMINISTRATION

## REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. §636(b) and Local Rule 73.2E(B), this matter comes before the Court on the parties' cross-motions for summary judgment following a decision of the Commissioner of the Social Security Administration denying plaintiff's application for Supplemental Security Income ("SSI") benefits. (Rec. docs. 9, 10).

Walter Bickham, plaintiff herein, filed the subject application for SSI benefits on May 3, 2002, alleging disability as of September 17, 1994. (Tr. pp. 30-31). In a Disability Report completed by plaintiff on May 3, 2002, he identified back and neck problems as the conditions resulting in his inability to work. (Tr. pp. 32-41). Those conditions first began bothering plaintiff

___ Fee_____
___ Process_____
_X_ Dktd_____
_✓_ CtRmDep_____
___ Doc. No._____

in 1991 and ultimately caused him to be unable to work on October 13, 2000.  (Tr. p. 33). Plaintiff's application for SSI benefits was denied at the initial step of the Commissioner's administrative review process on July 15, 2002.  (Tr. pp. 24-27).  Pursuant to plaintiff's request, a hearing de novo before an Administrative Law Judge ("ALJ") went forward on January 30, 2004 at which plaintiff appeared and testified.  (Tr. pp. 28-29, 106-116). On February 27, 2004, the ALJ issued a written decision in which he concluded that plaintiff was not disabled within the meaning of the Social Security Act.  (Tr. pp. 8-17).  The Appeals Council subsequently denied plaintiff's request for review of the ALJ's decision, thus making the ALJ's decision the final decision of the Commissioner. (Tr. pp. 4-6).  It is from that unfavorable decision that the plaintiff seeks judicial review pursuant to 42 U.S.C. §1383(c)(3).

In his cross-motion for summary judgment, plaintiff frames the sole issue for judicial review as follows:

> [t]he decision is not based on substantial evidence because the ALJ failed to fully develop the record for an unrepresented plaintiff.

(Rec. doc. 9, p. 5).

Relevant to the issue to be decided by the Court are the following findings made by the ALJ:

1.    [t]he claimant has not engaged in substantial gainful activity since the alleged onset of disability.

2

2.   [t]he claimant's status post lumbar discectomy with the
     subsequent fusion; and, degenerative disc disease of the
     cervical spine are considered "severe" based on the
     requirements in the Regulations 20 CFR § 416.920(b).

3.   [t]hese medically determinable impairments do not meet or
     medically equal one of the listed impairments in Appendix
     1, Subpart P, Regulation No. 4.

4.   [t]he undersigned finds the claimant's allegations
     regarding his limitations are not totally credible for
     the reasons set forth in the body of the decision.

5.   [t]he claimant has the following residual functional
     capacity:   lift and carry up to 20 pounds occasionally
     and 10 pounds frequently; stand and/or walk for a total
     of about 6 out of 8 hours; sit, with normal breaks for a
     total of about 6 out of 8 hours; occasionally climb,
     balance, stoop, kneel, crouch, and crawl.

6.   [t]he claimant is unable to perform any of his past
     relevant work (20 CFR § 416.965).

7.   [t]he claimant is a "younger individual between the ages
     of 45 and 49" (20 CFR § 416.963).

8.   [t]he claimant has a "high school (or high school
     equivalent) education" (20 CFR § 416.964).

9.   [t]he claimant has no transferable skills form any past
     relevant work and/or transferability of skills is not an
     issue in this case (20 CFR § 416.968).

10.  [t]he claimant has the residual functional capacity to
     perform the full range of light work (20 CFR § 416.967).

11.  [b]ased on an exertional capacity for light work, and the
     claimant's age, education, and work experience, a finding
     of "not disabled" is directed by Medical-Vocational Rule
     202.21.

12.  [t]he claimant was not under a "disability" as defined in
     the Social Security Act, at any time through the date of
     the decision (20 CFR § 416.920(f)).

                                        (Tr. p. 16).

                            3

Judicial review of the Commissioner's decision to deny SSI benefits is limited under 42 U.S.C. §405(g) to two inquiries: (1) whether substantial evidence of record supports the Commissioner's decision, and (2) whether the decision comports with relevant legal standards. <u>Anthony v. Sullivan</u>, 954 F.2d 289, 292 (5th Cir. 1992); <u>Villa v. Sullivan</u>, 895 F.2d 1019, 1021 (5th Cir. 1990); <u>Fraga v. Bowen</u>, 810 F.2d 1296, 1302 (5th Cir. 1987). If the Commissioner's findings are supported by substantial evidence, they are conclusive and must be affirmed. 42 U.S.C. §405(g); <u>Richardson v. Perales</u>, 402 U.S. 389, 91 S.Ct. 1420 (1971). A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings exist to support the Commissioner's decision. <u>Johnson v. Bowen</u>, 864 F.2d 340, 343-44 (5th Cir. 1988). Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. <u>Jones v. Heckler</u>, 702 F.2d 616, 620 (5th Cir. 1983). The Court may not reweigh the evidence or try the issues <u>de novo</u>, nor may it substitute its judgment for that of the Commissioner. <u>Cook v. Heckler</u>, 750 F.2d 391, 392 (5th Cir. 1985). Conflicts in the evidence are for the Commissioner to resolve, not the courts. <u>Patton v. Schweiker</u>, 697 F.2d 590, 592 (5th Cir. 1983).

A claimant seeking SSI benefits bears the burden of proving

that he is disabled within the meaning of the Social Security Act. Harrell v. Bowen, 862 F.2d 471, 475 (5th Cir. 1988). Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which... has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§423(d)(1)(A) and 1382c(a)(3)(A). Once the claimant carries his initial burden, the Commissioner then bears the burden of establishing that the claimant is capable of performing substantial gainful activity and is, therefore, not disabled. Harrell, 862 F.2d at 475. In making this determination, the Commissioner utilizes the five-step sequential analysis set forth in 20 C.F.R. §416.920, as follows:

  1. an individual who is working and engaged in substantial gainful activity will not be found disabled regardless of the medical findings.

  2. an individual who does not have a "severe impairment" will not be found to be disabled.

  3. an individual who meets or equals a listed impairment in Appendix 1 of the Regulations will be considered disabled without consideration of vocational factors.

  4. if an individual is capable of performing the work that he has done in the past, a finding of "not disabled" must be made.

  5. if an individual's impairment precludes him from performing his past work, other factors, including age, education, past work experience, and residual functional

5

capacity, must be considered to determine if other work can be performed.

On the first four steps of the analysis, the claimant bears the initial burden of proving that he is disabled. Bowen v. Yuckert, 482 U.S. 137, 146 n.5, 107 S.Ct. 2287, 2294 n.5 (1987). If the claimant carries that burden and successfully demonstrates that he is unable to perform the work that he has done in the past, the burden of proof shifts to the Commissioner at the fifth step to show that the claimant can perform other work in light of his age, education, work experience, and physical limitations. Kraemer v. Sullivan, 885 F.2d 206, 208 (5th Cir. 1989). In determining whether there is other work available that the claimant can perform, the Commissioner may rely exclusively on the Medical-Vocational Guidelines of the Regulations when the claimant suffers only from exertional impairments or when his non-exertional impairments do not significantly affect his residual functional capacity. Selders v. Sullivan, 914 F.2d 614, 618 (5th Cir. 1990); Fraga, 810 F.2d at 1304. Once the Commissioner demonstrates that the individual can perform other work, the burden then shifts back to the claimant to rebut that finding. Mays v. Bowen, 837 F.2d 1362, 1364 (5th Cir. 1988); Fraga, 810 F.2d at 1302.

At the outset of the administrative hearing held on January 30, 2004, the ALJ duly advised plaintiff of his right to obtain

6

representation for purposes of the proceeding. Plaintiff elected to waive that right and to proceed with the hearing in a pro se capacity. He testified that he was thirty-nine years of age at the time and that he had completed eleven grades of formal education.[1]/ Plaintiff had last worked as a maintenance man in October of 2000 but left that job due to an accident which ultimately forced him to retire. The accident in question was some type of fall with injuries to plaintiff's lower back and resulting surgery. Plaintiff had earned no income since then and relied upon help from his children and food stamps to make ends meet.

Since that time, plaintiff testified that he continued to suffer from back and neck problems and a Charity Hospital neurosurgeon had reportedly advised him that he could no longer work. Plaintiff stated that he was in constant pain, ten on a scale of one to ten, and stress to his whole body at all times, but particularly the legs, neck, and shoulders, as well as numbness to the hands, legs, and feet. Medications did help plaintiff sleep and he made vague reference to "correction with surgery."

---

[1]/ As respects his age, numerous exhibits admitted into the administrative proceedings below indicate that plaintiff's date of birth was July 6, 1956, thus making him forty-seven years of age at the time of the administrative hearing. (See, e.g., tr. pp. 30, 70, 74, 75). In the Disability Report that he completed on May 3, 2002, plaintiff indicated that he had completed twelve years of formal education. (Tr. p. 39).

7

Plaintiff spent a typical day lying down or sitting due to the fact that he was on medication. He was able to drive, having done so to attend the hearing, but generally drove only "sparingly." Plaintiff estimated that he could walk two blocks and sit for one hour at a time. He was able to stand for five to six hours on some days but only twenty minutes on others, with his legs often giving out. Plaintiff could bend very little and suffered from manipulation problems due to his shoulders. He had recently seen his orthopedist on January 26, 2004 and was scheduled to meet with his neurosurgeon on March 8, 2004. While his second back surgery had initially provided him with relief, his condition had subsequently worsened and now included spinal arthritis which made his bones hurt. (Tr. pp. 106-116).

The medical records admitted into the administrative proceedings below reveal that plaintiff was seen by Dr. Kenneth Vogel at the Memorial Medical Center ("MMC") on October 31, 2000. Plaintiff advised Dr. Vogel that he had fallen through a staircase while visiting a friend on October 8, 1998 and subsequently experienced lumbosacral and bilateral leg pain as well as left knee and cervical pain. Plaintiff had been able to resume his duties as a maintenance worker three to four months post-accident but continued to experience progressively severe lumbosacral and bilateral leg pain despite extensive conservative care. His past

8

medical history was positive for microsurgical discectomy in 1992 and a return to carpentry work in 1995. On physical examination, plaintiff had positive neurological findings limited to the lumbosacral region with a mild degree of limitation of motion in all directions and flexion limited to seventy degrees. There was a moderate degree of muscle spasm bilaterally, mild scoliosis to the right, and positive straight leg raising at seventy degrees bilaterally. A motor examination was limited by pain and a sensory examination revealed hypalgesia of the left medial foot. A facet examination produced lower facet pain bilaterally and an examination of the cervical area revealed only mild limitations. The impression was status post microsurgical discectomy and symptomatic lumbar degenerative disease. The plan was to admit plaintiff in-patient and perform a posterior lumbar interbody cage fusion at L5-S1.  (Tr. pp. 68-69).

Pursuant to Dr. Vogel's direction, plaintiff was admitted to MMC on November 2, 2000 where he underwent the recommended surgical procedure.  Plaintiff's post-operative course was uneventful and he was discharged in satisfactory condition on November 5, 2000 with an estimated disability period of three to six months. (Tr. pp. 66-67).  Plaintiff was seen by Dr. Vogel some six weeks post surgery on December 12, 2000.  He complained of mild lumbosacral pain at the time and had a mild degree of limitations of motion in

9

all directions with mild muscle spasm bilaterally.  Plaintiff was directed to continue conservative care, including physical therapy, and to return for reevaluation in six weeks.  (Tr. p. 73).

Plaintiff reported mild lumbosacral pain when he returned to Dr. Vogel on January 23, 2001.  Physical examination revealed a mild degree limitation of motion in all directions with mild muscle spasm bilaterally.  Plaintiff was attending physical therapy at the time and was instructed to continue doing so.  Dr. Vogel opined that plaintiff "... will have incurred a 15 to 20 percent medical impairment of the body as a whole with further restrictions in that he has been advised to avoid those activities which require him to lift, push or pull greater than 35 pounds or bend repeatedly on a permanent basis in the future."  Plaintiff was to return to Dr. Vogel on an "as needed" basis who estimated that he would reach maximum medical improvement two years post-operatively.  (Tr. p. 72).

On April 10, 2001, Dr. Vogel authored a "To Whom It May Concern" letter after seeing plaintiff again on that date. Plaintiff's complaints at the time included mild lumbosacral pain plus cramping right leg pain precipitated by sitting at night.  A neurologic examination revealed a mild degree of limitation of motion in all directions with focal muscle spasm bilaterally. Straight leg raising was positive at 70 degrees on the right, deep

10

tendon reflexes were a trace, a motor exam was limited by pain, and there was lower lumbar facet pain bilaterally.  Plaintiff was to continue with physical therapy and was to return on an as needed basis.  (Tr. p. 71).

On May 30, 2002, plaintiff underwent radiological testing of the cervical spine at the Medical Center of Louisiana at New Orleans ("MCLNO").  That procedure revealed anterior osteophytes at the C5 level with C5-6 intervertebral disc space narrowing; a small area of ossification within the posterior soft tissue of the neck; right-sided neural foramina narrowing at C5-6; and, degenerative changes with hypertrophy of the C5-6 uncovertebral joints.  (Tr. p. 75).

On June 28, 2002, plaintiff was consultatively evaluated by Dr. Miljana Mandich.  Plaintiff's major complaints at the time included anxiety and pain in the neck, back, and legs. He reported injuries to his neck and lower back following an auto accident in 1992 with a discectomy being performed by Dr. Vogel.  Plaintiff was able to return to work until November of 2000 when he injured his neck and lower back again in a fall.  Following that incident, Dr. Vogel had performed an interbody cage fusion.  Plaintiff had since been followed by the University Hospital Orthopedic Clinic which had supposedly rendered a diagnosis of arthritis of the neck. Plaintiff also related left knee and calf pain to his accident in

11

2000, experiencing cramps and numbness in the toes with prolonged sitting and when lying in bed.  Plaintiff had also been nervous following his 1992 injury and had received treatment therefor for one year.

Upon physical examination, plaintiff ambulated without difficulty but walked slowly while complaining of neck and back pain.  Plaintiff guarded his lower back when rising out of a chair or on or off the examination table.  He also actively guarded range of motion of the neck and lower back, complaining of soreness in the muscles across the back of the neck and over the shoulders and shoulder blades.  Plaintiff also had pain in the lower back across the sacroiliac junctions radiating down the back of the thighs, across the front of the knees, and in the back of the calves all the way to the heel and across the toes.  Tingling in the tips of his toes was also reported.  Plaintiff could heel-to-toe walk and straight leg testing produced pain at 70-80 degrees.  He had a normal range of motion in all the joints, including the knees, but back pain was elicited when bending the knees while in a lying down position.    Muscle bulk, tone, and strength were preserved in all four extremities and deep tendon reflexes were  a trace to 1+. Sensation was normal except for tingling across the tips of the toes  bilaterally.  Dr. Mandich's  diagnosis was a history of neck and  low back injury  following a car accident in 1992;  a lower

12

lumbar micro discectomy in 1992; history of a fall with neck, low back, and left knee injury in November of 2000 with subsequent interbody cage fusion; chronic neck and low back pain; and, nervousness.  (Tr. pp. 76-82).

On July 1, 2002, a medical consultant with the State Disability Determination Services reviewed the medical records then extant and rendered a residual functional capacity assessment of plaintiff, finding that he could occasionally lift twenty pounds and frequently lift ten pounds; that he could sit, stand, and/or walk for six hours per eight-hour workday; that he had an unlimited ability to push and/or pull; that he could frequently balance but only occasionally perform other postural maneuvers; and, that he had no manipulative, visual, communicative, or environmental limitations.  (Tr. pp. 83-90).

As noted earlier, plaintiff challenges the Commissioner's decision to deny him SSI benefits on one ground, that the ALJ failed to fully and adequately develop the record below in light of plaintiff's pro se status before the Administration.  More specifically, plaintiff alleges that the ALJ failed to explore his treatment at MCLNO "...despite the indications both from testimony and exhibits (the two notes from the Medical Center of LA, Tr. 101 and 102) which clearly evidenced that records were missing from the plaintiff's file which could be relevant to his application."

13

(Rec. doc. 9, p. 6).  According to plaintiff, the ALJ asked no questions about his treatment at MCLNO and requested no additional medical records. (Id.).

The Fifth Circuit has held that "'an Administrative Law Judge's basic obligation to develop a full and fair record rises to a special duty when an unrepresented claimant unfamiliar with hearing procedures appears before him.'"  McConnel v. Schweiker, 655 F.2d 604, 606 (5th Cir. Unit B 1981)(quoting Clark v. Schweiker, 652 F.2d 399, 404 (5th Cir. Unit B 1981) and Barker v. Harris, 486 F. Supp. 846, 849 (N.D. Ga. 1980)).  Nevertheless, procedural perfection in administrative proceedings is not required.  Morris v. Bowen, 864 F.2d 333, 335 (5th Cir. 1988).  An ALJ's decision will be reversed as not being supported by substantial evidence if the claimant shows (1) that the ALJ failed to fulfill his duty to adequately develop the record, and (2) that the claimant was prejudiced thereby.  Kane v. Heckler, 731 F.2d 1216, 1220 (5th Cir. 1984).  "To establish prejudice, a claimant must show that he 'could and would have adduced evidence that might have altered the result.'"  Brock v. Chater, 84 F. 3d 726, 728 (5th Cir. 1996)(quoting Kane, 731 F.2d at 1220); Ripley v. Chater, 67 F.3d 552, 557 (5th Cir. 1995).

Even at this late juncture, plaintiff provides the Court with no evidence that would have changed the outcome of the

14

Commissioner's decision even if such evidence had been requested from MCLNO and presented to the ALJ. Brock, 84 F.3d 728-29; Kane, 731 F.2d at 1220. Prior to the proceedings held on January 30, 2004, plaintiff was issued a Pre-Hearing Order which emphasized the importance of his submitting all updated medical evidence from treating sources. (Tr. pp. 63-64). The ALJ's Notice of Hearing similarly advised plaintiff to submit all documentary evidence in advance of, or even at, the administrative hearing. (Tr. pp. 18-21). Pursuant to those advices, on the morning of the hearing, plaintiff presented a prescription pad note from Dr. Allen Butler dated June 23, 2003 which reads that "Mr. Bickham has cervical radiculopathy that prevents him from working. He is being evaluated for surgery." (Tr. p. 101). The note is unaccompanied by any contemporaneously recorded acceptable medical findings. Plaintiff also produced an Orthopedic Clinic note of that same date in which he was referred to the Neurology Department for further evaluation. (Tr. p. 102). Additional scheduling notices indicated that plaintiff was to be seen at the Orthopedic Clinic on January 26, 2004, by the Neurology Clinic on March 8, 2004, and again by the Orthopedic Clinic on March 22, 2004. (Tr. pp. 103-105). Plaintiff touched on the results of his January 26, 2004 clinic visit at the administrative hearing held four days later and he also advised the ALJ that he was to be evaluated for surgery on

15

March 8, 2004. (Tr. pp. 114-115). Plaintiff's medications at the time included only Bextra once per day which is indicated for the relief of osteoarthritis and adult rheumatoid arthritis. Physician's Desk Reference, 59th Ed., pp. 2695-2698. As plaintiff has failed to provide the Court with the very records he contends the ALJ should have considered, he has not proven that he was prejudiced by any omission on the Commissioner's part or that the result of the administrative proceedings would have been any different had the records been produced.

### RECOMMENDATION

For the foregoing reasons, it is recommended that plaintiff's motion for summary judgment be denied and that defendant's motion for summary judgment be granted.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation contained in a magistrate judge's report and recommendation within 10 days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. Douglass v. United Services Auto. Assoc., 79 F.3d 1415 (5th Cir. 1996)(en banc).

New Orleans, Louisiana, this _2nd_ day of _November_,

16

2005.

ALMA L. CHASEZ
UNITED STATES MAGISTRATE JUDGE